IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAUREL ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:09-cv-288-WKW |
| ) | |
| CITY OF MONTGOMERY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the undersigned Magistrate Judge is Defendants' Motion for Summary Judgment (Doc. #40) and supporting Brief (Doc. #41) with accompanying evidentiary materials. Plaintiff Jaurel Rogers ("Plaintiff" or "Rogers") has not filed a response to the Motion, and the time in which such a response could be filed pursuant to the Court's General Briefing Order (Doc. #13) has expired. Accordingly, the undersigned issues this Recommendation without the benefit of a response from Plaintiff. For the reasons that follow, the Magistrate Judge RECOMMENDS that the Motion for Summary Judgment (Doc. #40) be GRANTED in part and DENIED in part and that this case be DISMISSED.

**I.    BACKGROUND**

On April 6, 2009, Plaintiff, then represented by counsel, filed a Complaint (Doc. #1) in which he alleged several causes of action pertaining to events surrounding the termination of his employment with the Montgomery Police Department. Specifically, Plaintiff stated the following four causes of action: 1) that "Defendant," presumably the City of

Montgomery, subjected Plaintiff "to adverse and discriminatory treatment sufficient to alter the terms, conditions and privileges of his employment, and the treatment to which he was subjected was because of his race, black," in violation of 42 U.S.C. § 1981; 2) that such treatment also constitutes a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; 3) that he was retaliated against by Defendants, in violation of Title VII and § 1981, after undertaking protected activities including the filing of a charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"); and 4) that Defendant Davis committed unlawful assault and battery upon Plaintiff in violation of Alabama law. Complaint (Doc. #1) at ¶¶ 72, 83, 91-94, & 102-104.

On October 26, 2009, Plaintiff's counsel of record, citing a "breakdown in the attorney/client relationship," moved to withdraw from this case. Motions (Docs. #14,15). The motions were granted, Order (Doc. #16), and Plaintiff has proceeded *pro se* with his case. On December 11, 2009, this matter was referred to the undersigned for "all pretrial proceedings and entry of any orders or recommendations as may be appropriate." Order (Doc. #20). On June 7, 2010, Defendants filed the instant Motion and supporting materials. Defendants assert they are entitled to summary judgment for the following reasons: 1) Plaintiff has not established a *prima facie* case of race discrimination; 2) that, even assuming such a *prima facie* case, Defendants' reasons for terminating Plaintiff's employment are legitimate and non-discriminatory; 3) Plaintiff has not shown that any deprivation he suffered was due to a "policy or custom" of the City of Montgomery; 4) that Defendant Lt. Davis is

2

entitled to qualified immunity; 5) Plaintiff has not established a *prima facie* case of retaliation; 6) even assuming a *prima facie* case of retaliation, the City of Montgomery had several legitimate, nondiscriminatory reasons for terminating Plaintiff's employment; and 7) Plaintiff's claim of assault and battery fails under governing state law.

## II.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence

showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.   STATEMENT OF UNDISPUTED FACTS

The Court has carefully considered the pleadings in this case and all documents submitted in support of the Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant

facts[1]:

Plaintiff Jaurel Rogers ("Plaintiff" or "Rogers") is an African-American male over nineteen years of age. Defendants are the City of Montgomery ("City" or "Police Department" or "MPD") and Lieutenant Jeffery L. Davis ("Lt. Davis"), an officer employed by the MPD. Plaintiff was hired by the MPD in 2006 and was formerly assigned to the Patrol Division. On February 21, 2008, Lt. Davis suspected that one of his patrol officers, R.L. Dorsey, was not patrolling as assigned because he was answering calls from his handheld radio. Upon further investigation, around 11:00 p.m., Lt. Davis observed two unoccupied MPD patrol cruisers in the parking lot of Vintage Point Apartments. The two cars were assigned to Officer Dorsey and Plaintiff. Lt. Davis confronted Officer Dorsey about his conduct at police headquarters. Officer Dorsey first claimed that he had been patrolling his area that evening. When Lt. Davis informed him that he knew Officer Dorsey had been at an apartment, Officer Dorsey advised that he had become sick while out on patrol and that Plaintiff had allowed him to use his apartment while sick.

At around midnight, Plaintiff was summoned by Lt. Davis to police headquarters. Upon his arrival around 12:15, Plaintiff was asked how long he had been at his apartment that evening. Plaintiff advised he had been there since his break around 10:00 p.m. and

---

[1] Pursuant to the standards set forth in Rule 56(c) and discussed above, in failing to respond to Defendant's Motion for Summary Judgment, Plaintiff has essentially failed to provide evidentiary support for any factual averment which conflicts with those set forth in Defendants' Motion. Accordingly, the Court bases its findings of undisputed facts largely on the evidence of record submitted by Defendants.

repeated Officer Dorsey's claim that he had allowed Officer Dorsey to use his apartment while sick. Communications records utilized by the MPD indicate that Plaintiff had actually taken his break that evening from around 8:44 p.m. to 9:41 p.m. During the time he was at his apartment, Plaintiff was on-duty for receipt of service calls and was more than two miles from his assigned patrol district.

Lt. Davis stripped Plaintiff and Officer Dorsey of their patrol district assignments and made them eligible for reassignment within the MPD. On February 23, 2008, Lt. Davis "counseled" Plaintiff pursuant to MPD's internal disciplinary operating procedures. Lt. Davis completed a Counseling Report Form which described Plaintiff's conduct and reported that such conduct violated the MPD's rules and regulations because Plaintiff was out of his assigned patrol district and had failed to advise Officer Dorsey to contact supervisors and failed to do so himself. The form further advised Plaintiff of the following disciplinary measures: loss of the privilege of a take-home vehicle; loss of his assigned patrol district; required to ride with a senior officer when applicable; and required to notify dispatch every half-hour of his location and status when riding alone. When asked to sign the counseling form, Plaintiff complied but wrote under his signature "Do Not Concur." Under the signature block for the counseled officer and the counselor, the form bears the following caveat: "I sign this form as an acknowledgment that I have been counseled. This is neither an admission nor a denial of the facts stated."

Because of some misspelled words on the Counseling Report Form and Plaintiff's

6

extraneous written comment on the form, Lt. Davis attempted to complete a second Counseling Report Form on February 28, 2008. The second form contains substantially identical factual assertions and disciplinary measures as the first. However, Plaintiff refused to sign the second form. Plaintiff was advised that if he did not agree with the statements made on the form, the proper procedure was to complete a statement explaining his disagreement and utilize the MPD's chain of command, but that he was required to sign the form to acknowledge his counseling. Plaintiff was given a direct order to sign the form. Nevertheless, Plaintiff refused to sign the form if he was not allowed to indicate his disagreement on the face of the form. Plaintiff was immediately assigned to the "back desk" and later assigned to the city jail while the MPD further investigated the matter.

On May 19, 2008, Plaintiff completed an EEOC Charge of Discrimination based on alleged racial discrimination by the MPD. On June 12, 2008, Plaintiff was scheduled to report to his assignment at the jail at 2:30 p.m. At some point after his reporting time, Plaintiff met with Lt. Davis and his immediate supervisor, Sgt. Holmes, to discuss the MPD's investigation of his conduct. After the meeting, Plaintiff was instructed to report to the jail. At the jail, Officer Hopkins placed several calls to Sgt. Holmes and elsewhere in the MPD in attempting to locate Plaintiff. Sgt. Holmes at first disclaimed knowledge of Plaintiff's whereabouts but, when reached the third time, stated that Plaintiff was in the Juvenile Division. Plaintiff finally reported to the jail at around 5:45 p.m. and claimed that he had been doing something for Sgt. Holmes. Officer Hopkins advised Plaintiff that he should

contact the jail if he will not be reporting at his scheduled time. Officer Hopkins perceived Plaintiff's response to this request as obstinate and argumentative.

On June 13, 2008, Lt. Davis was instructed to bring Plaintiff to Captain A.J. Hardy's office to discuss his conduct the previous day. Lt. Davis escorted Plaintiff to Capt. Hardy's office around 2:30 p.m. Other witnesses from MPD attended the meeting. Plaintiff was advised that he was under the supervision of the jail supervisors and that he was to timely report to his duty assignment. He was instructed to complete a memorandum concerning the previous day, including his whereabouts during the time he was scheduled to report. Plaintiff was observed by some of the witnesses oddly placing his fingers on the left side of his body repeatedly, apparently attempting to manipulate something. Lt. Davis, suspicious of Plaintiff's mannerisms during recent conversations, asked Plaintiff if he was carrying a recording device.[2] Plaintiff refused to answer, claiming it was a personal matter. He was asked by Capt. Hardy but still refused to answer. Capt. Hardy left and came back with Sgt. Wingard of internal affairs. Plaintiff again refused to answer the question. Capt. Hardy left again and returned with Lt. Col. Murphy. Lt. Col. Murphy advised Plaintiff that if he continued to defy supervisors' orders to answer the question he would be relieved of duty. Plaintiff refused to answer when Lt. Col. Murphy queried him and stated that he wanted his lawyer. Lt. Col. Murphy then ordered Plaintiff to remove his gun belt, badge, building access card, and identification card. Lt. Col. Murphy left the room but abruptly returned upon

---

[2] According to MPD policy, recording of employees without official sanction is prohibited.

hearing raised voices in the room. Plaintiff refused to comply with the order to surrender his belt, badge, and cards. Lt. Col. Murphy observed Plaintiff standing in a "defiant" pose, with his hands at his side near his pistol and taser. After Plaintiff defied the order three or four more times, Lt. Davis reached over and removed the badge from Plaintiff's shirt. Plaintiff swiped at Lt. Davis's arms and made some remark about being struck by Lt. Davis, but none of the witnesses who observed the incident describe it as anything other than Lt. Davis employing minimal force to remove the badge. Lt. Col. Murphy told Plaintiff he was acting irrationally and that he needed to surrender his equipment. At this point, Plaintiff removed the belt and handed it, along with his building access card, to Lt. Col. Murphy. Capt. Hardy then escorted Plaintiff from the building.

After being relieved of duty, Plaintiff did not contact his shift commander as required at the beginning of his next scheduled shift. On June 20, 2008, the MPD began making attempts to locate Plaintiff. Plaintiff refused to answer the door at his apartment, but his car was in the parking lot and there were lights on in the apartment. A note left on the door instructing Plaintiff to contact MPD was removed by the time MPD made a second trip to the apartment. The MPD requested that the Macon County Sheriff's Department attempt to locate Plaintiff at another address associated with him in an unincorporated part of Tuskegee. Plaintiff could not be located at that address either. On June 21, 2008, Sgt. B.F. Harrison attempted two more visits to Plaintiff at his apartment. A note left on the door after the first visit had been removed by the second visit. Sgt. Harrison called Plaintiff's phone. The

9

recipient disavowed being Plaintiff and took a message for Plaintiff to call Sgt. Harrison. On June 22, 2008, Sgt. Harrison again visited Plaintiff's apartment and left a note for Plaintiff to contact him on his mobile phone. Later that evening, Sgt. Harrison learned that Plaintiff had attempted to call him at the patrol supervisor's office. Sgt. Harrison attempted to return Plaintiff's call but again could not reach him. Sgt. Harrison again attempted to phone Plaintiff on June 23, 2008, to no avail.

On August 4, 2008, the City sent Plaintiff a letter to his Tuskegee address advising him that his employment with the City had been terminated due to "unauthorized and unreported absence from work for a period of three or more days." The letter also advised of a pending appeal hearing date. Plaintiff attended the hearing but did not offer testimony or evidence in defense of his actions other than to assert that he had attempted to return calls from his supervisors.

## IV.   DISCUSSION

Defendants have moved for for summary judgment on each of Plaintiff's claims. The Court will address each claim below.

### A.   Discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

In counts one and two of his Complaint, Plaintiff claims that he was subjected "to adverse and discriminatory treatment sufficient to alter the terms, conditions and privileges of his employment, and the treatment to which he was subjected was because of his race,

black," in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. Complaint (Doc. #1) at ¶¶ 72, 83. Plaintiff further claims that he was racially discriminated against through MPD's reprimands and eventual termination because "white officers who committed the same alleged violations and/or more serious violations received much lighter or no punishments retained their rank, pay, and duties and are still employed by Defendant." *Id.* at ¶¶ 73, 84. Defendants contend that Plaintiff has failed to state a *prima facie* claim of racial discrimination related to his reprimands and termination and that, even if he could state a *prima facie* case of discrimination, Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons.

Discrimination claims predicated upon Title VII and § 1981 "have the same requirements of proof and use the same analytical framework, therefore [the Court] shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "A prima facie claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir.1990)). Plaintiff has offered no direct evidence of racial discrimination by

11

Defendants. Rather, Plaintiff's Complaint appears to rely upon only circumstantial evidence in support of his claims of discrimination. Accordingly, the Court must utilize the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.[3]

Under the *McDonnell Douglas* framework, to establish a *prima facie* case of race discrimination under Title VII the plaintiff must show: "(1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) []he was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

There is no dispute that Plaintiff is a member of a protected class, that he was subjected to an adverse employment action, or that Plaintiff was qualified to do the job which he once held. Although Defendants dispute that Plaintiff has offered a legitimate comparator for purposes of showing that non-protected persons have received favorable treatment, the Court need not decide that issue. Even if this Court assumes, *arguendo*, that Plaintiff has

---

[3] *See Standard*, 161 F.3d at 1332 ("When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973). Under this framework, the plaintiff must establish a *prima facie* case of discrimination. The establishment of a *prima facie* case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.").

established a a *prima facie* case of racial discrimination, Defendants have provided the Court with legitimate, non-discriminatory reasons for the adverse employment actions taken against Plaintiff. Specifically, Defendants state that the initial actions taken against Plaintiff, including taking his assigned patrol district, revoking his privilege of using a take-home vehicle, and requiring him to ride with a senior patrol officer or update dispatch every thirty minutes while on solo patrol, were implemented because Plaintiff was outside of his assigned patrol area while on-duty and failed to notify a supervisor that Officer Dorsey was temporarily incapacitated due to illness. Def.'s Brief (Doc. #41) at 12. Likewise, Plaintiff's assignment to the "back desk" resulted from his failure to follow his supervisor's order to sign the revised Counseling Report Form on February 28, 2008. *Id.* at 13. Plaintiff was relieved of duty due to his repeated refusal to answer several of his supervisors' questions about whether he was carrying an audio recording device. Finally, Plaintiff's termination resulted from Plaintiff's failure to report to MPD or otherwise contact MPD for more than two weeks after he was relieved of duty on June 13, 2008, despite numerous attempts by various MPD employees to contact him on the phone and in-person.[4] Because the MPD, pursuant to City code, perceived Plaintiff as having abandoned his job, Plaintiff was terminated. *Id.* at 15.

---

[4] The one instance where Plaintiff attempted to contact Sgt. Harrison by leaving a message at the patrol supervisor's office rather than Sgt. Harrison's phone, but then subsequently failing to take Sgt. Harrison's follow-up call or return the call simply does not suffice as a concerted, good-faith effort to report for duty or otherwise meaningfully contact the MPD as he was instructed.

Each of the actions taken by Plaintiff which resulted in some adverse employment action constituted a violation of MPD rules and regulations for which disciplinary measures were appropriate. Thus, the uncontroverted evidence in the record establishes that the MPD's proffered reasons for instituting various adverse employment actions were legitimate and non-discriminatory. Accordingly, the burden shifts back to Plaintiff to discredit Defendant's proffered reasons as pretextual.

In order to survive summary judgment where the plaintiff asserts that an employer's proffered legitimate reasons for termination are pretext, the plaintiff must

> cast sufficient doubt on the defendant's proffered . . . reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct but were pretext for [the discriminatory action]. A plaintiff may show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. A plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. In reviewing a summary judgment motion, the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

*Corbitt v. Home Depot U.S.A., Inc.,* 573 F.3d 1223, 1248 (11th Cir. 2009) (internal quotations and citations omitted).

In failing to respond to Defendants' Motion, Plaintiff has clearly failed to offer "evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.* Plaintiff is not permitted to stand on the

14

allegations of his complaint in order to prove pretext. *See Celotex*, 477 U.S. at 324 (Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"). Thus, Plaintiff has failed to demonstrate pretext.

In sum, assuming that Plaintiff has established a *prima facie* case of racial discrimination flowing from the adverse employment actions about which he complains, itself a dubious assumption, Plaintiff has not demonstrated that a reasonable fact finder could determine that the legitimate, non-discriminatory reasons given for such actions are pretextual. Accordingly, he can not withstand summary judgment on his discrimination claims.[5]

### B. Retaliation in violation of 42 U.S.C. § 1981 and Title VII.

Plaintiff claims that he was unlawfully retaliated against for filing separate EEOC charges alleging racial discrimination and retaliation by the MPD. Complaint (Doc. #1) at ¶¶ 91-93. "To make a *prima facie* showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment

---

[5] The undersigned is also mindful that, in this Circuit, "[t]he ultimate question in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff." *Nix v. WLCY Radio/Rahall Commc's*, 738 F.2d 1181, 1184 (11th Cir.1984) (internal quotations omitted). Thus, even after undertaking the pretext analysis above, the Court has reviewed the entire record in consideration of the Motion for Summary Judgment and finds that there was no intentional discrimination against Plaintiff.

action; and (3) that there is 'some causal relation' between the two events." *Alvarez v. Royal Atlantic Developers, Inc.*, 2010 WL 2631839 at *11 (11th Cir. July 2, 2010) (quoting *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)). "With respect to the third element, a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. However, to satisfy the causal link prong, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Sridej v. Brown*, 361 F. App'x 31, 35 (11th Cir. 2010) (internal quotations and citations omitted).

Plaintiff's first charge of discrimination was filed on May 19, 2008. Complaint (Doc. #1) at ¶ 37. Likewise, Plaintiff's second charge was filed sometime in late June or early July, 2008. Complaint (Doc. #1) at 64. The only adverse employment actions about which he complains that occurred after either of those dates are his being relieved of duty on June 13, 2008, and subsequent termination. Plaintiff has not offered compelling proof that his protected activities and the adverse employment actions "are not unrelated." As discussed above, each of these adverse employment actions were based on reasons pertaining to Plaintiff's own conduct in discharging his duties. Moreover, Plaintiff has not demonstrated that Defendants were aware of either charge of discrimination when carrying out the adverse employment actions. Hence, Plaintiff has likely failed to show the requisite "causal relation" to establish a *prima facie* case of retaliation.

16

Even assuming that Plaintiff has established a *prima facie* case of retaliation, however, Defendant has proffered legitimate, nondiscriminatory reasons for the adverse employment actions taken. "If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is pretext for retaliation." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). To show such pretext, "[t]he plaintiff must meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007). As discussed above, in failing to respond to Defendant's Motion and submit evidence in his own behalf, Plaintiff has clearly failed to rebut MPD's proffered reasons for its actions and demonstrate that such reasons were pretext for unlawful retaliation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**C.     Plaintiff's state law assault and battery claim.**

Plaintiff claims that he suffered unlawful assault and battery on June 13, 2008, when Lt. Davis physically removed his badge from his uniform. Complaint (Doc. #1) at ¶ 102. However, because the Court herein recommends the dismissal of Plaintiff's federal law claims, the Court also recommends declining supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3); *see also Pintando v. Miami-Dade Housing Authority*, 501 F.3d 1241, 1242 (11th Cir. 2007); *McCulloch v. PNC Bank, Inc.,* 298 F.3d 1217, 1227 (11th Cir. 2002). Therefore, Defendant's Motion for Summary Judgment on Plaintiff's state law claim should be denied as moot and the state law claim should be dismissed without

17

prejudice.

## V. CONCLUSION

For the reasons specified above, the Magistrate Judge RECOMMENDS as follows:

1. that Defendants' Motion for Summary Judgment (Doc. #40), be GRANTED as to Plaintiff's discrimination and retaliation claims (counts one, two, and three of the Complaint) and DENIED as moot as to Plaintiff's state law assault and battery claim (count four);

2. that Plaintiff's claim of assault and battery (count four of the Complaint) be DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and

3. that this case be DISMISSED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation by **July 26, 2010**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

    DONE this 12th day of July, 2010.

                                               /s/ Wallace Capel, Jr.
                                               WALLACE CAPEL, JR.
                                               UNITED STATES MAGISTRATE JUDGE